**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

Dawn Marie Daniel,
*Plaintiff,*
v.

Timothy M. Brady, in his individual capacity;
Kevin Jacquin, in his individual capacity; and
Franklin County, Missouri,
*Defendants.*

CASE NO.
4:26-CV-__________

JURY TRIAL DEMANDED

## COMPLAINT

**COMES NOW** Plaintiff, Dawn Marie Daniel, by and through undersigned counsel, and for her Complaint against the Defendants, hereby states as follows:

## NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983 and Missouri law. On September 23, 2025, two Franklin County Sheriff's deputies seized Plaintiff, an unarmed fifty-one-year-old woman, in the doorway of her own home on suspicion of a misdemeanor. They pulled her out of the house, and she was thrown to the surface of her front porch. The force broke her left humerus into three parts. The Franklin County Prosecuting Attorney's Office refused to file any charge against her.

## PARTIES

2. Plaintiff Dawn Marie Daniel is an adult resident of Franklin County, Missouri.
3. Defendant Timothy M. Brady ("Brady") was at all relevant times a deputy sheriff employed by the Franklin County Sheriff's Office, DSN 1185. He is sued in his individual capacity.
4. Defendant Kevin Jacquin ("Jacquin") was at all relevant times a deputy sheriff employed by the Franklin County Sheriff's Office, DSN 1263. He is sued in his individual capacity.
5. At all relevant times, Brady and Jacquin acted under color of state law and within the course and scope of their employment as Franklin County deputy sheriffs.
6. Defendant Franklin County, Missouri (the "County") is a county and political subdivision of the State of Missouri. Acting through the Franklin County Sheriff and the Franklin County Sheriff's Office, the County employs, trains, supervises, and disciplines its deputy sheriffs, including Brady and Jacquin. The Sheriff is the County's final policymaker for the law enforcement policies, practices, training, and supervision at issue in this action.

## JURISDICTION AND VENUE

7. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

8. This Court has supplemental jurisdiction over Plaintiff's Missouri law claim under 28 U.S.C. § 1367(a) because that claim is so related to the federal claims that it forms part of the same case or controversy.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in Franklin County, Missouri, which lies within this District.

10. Divisional venue is proper in the Eastern Division under Local Rule 2.07 because Plaintiff's claims arose in Franklin County, Missouri, which lies within the Eastern Division.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### *The 911 Call*

11. On September 23, 2025, Plaintiff was fifty-one years old and lived in her home at 2 Terrace Hill Court, Labadie, Franklin County, Missouri. Christopher Tippett also lived in the home.

12. At approximately 10:26 p.m. that night, Tippett called 911 during an argument with Plaintiff inside the home.

13. The County's computer-aided dispatch record for the call, Event No. 2025-00065848, recorded the following before any deputy made contact with Plaintiff:

(a) "NO WEAPONS";

(b) "NO EMS";

(c) "NO ONE ELSE IN THE HOUSE";

(d) "RP CLAIMS SHE WOULD NOT BE VIOLENT WITH FIRST RESPONDERS";

(e) "RP IS NOW OUTSIDE TO GET AWAY FROM THE SITUATION"; and

(f) "RP IS ON THE FRONT PORCH."

14. "RP" in the dispatch record refers to the reporting party, Tippett.

15. The dispatch record also recorded that Tippett "WANTS TO MAKE SURE HE'S DOING EVERYTHING RIGHT BECAUSE HE IS GOING THROUGH A PROGRAM," identified in the record as "THE BIP PROGRAM." On information and belief, "BIP" refers to a batterer intervention program.

16. The information in the dispatch record was available to Brady and Jacquin and, on information and belief, was relayed to or reviewed by them before they made contact with Plaintiff.

### ***The Seizure***

17. Brady and Jacquin arrived at Plaintiff's home at approximately 10:33 p.m. Tippett met them outside.

18. Tippett was not injured. He did not ask for medical attention. He was outside the home, away from Plaintiff, and in the company of two armed deputies.

19. Tippett told the deputies that Plaintiff was inside the home, lying on the couch. The front door was locked.

20. Neither deputy had a warrant to arrest Plaintiff or to enter her home.

21. The deputies went to the front door with Tippett. Tippett knocked and told Plaintiff to unlock the door.

22. Plaintiff unlocked and opened the door. She remained inside her home. She said that no one needed to talk to her.

23. When Plaintiff opened the door, Tippett was standing in the doorway between Plaintiff and the deputies.

24. Plaintiff had no weapon. She did not strike, kick, or threaten Brady or Jacquin. She did not attempt to flee.

25. Brady told Plaintiff to back up and told her that she would be placed in handcuffs. Plaintiff, standing inside her own home, said that was not going to happen.

26. Brady then reached into the doorway, took hold of Plaintiff's right wrist, and ordered her to turn around and step outside.

27. By the deputies' own written accounts, the most Plaintiff did in response was hold on to the door of her home and pull her arm back toward herself.

28. Brady then forcibly pulled Plaintiff out of her home through the doorway. Brady wrote in his report: "I had to pull her from the doorway, at which time she lost her balance and fell on the porch." Jacquin wrote in his supplemental report that Brady "pulled Dawn away from the door, causing her to lose her balance and fall on the deck."

29. The force Brady used threw Plaintiff to the surface of the porch.

30. Before pulling Plaintiff out of her home, Brady did not ask Tippett to step away from the door, did not attempt to speak with Plaintiff outside Tippett's presence, and did not attempt any lesser means of gaining her cooperation. Nothing required

an immediate physical seizure. Tippett was safe, no one else was in the home, and Plaintiff was inside her own house and going nowhere.

31. While Plaintiff was on the porch, Brady and Jacquin pulled her arms behind her back and handcuffed her, using two sets of handcuffs.

32. Plaintiff told the deputies repeatedly that she was in pain. Jacquin wrote in his report that Plaintiff "stated several times that the hand cuffs hurt."

33. Brady and Jacquin left Plaintiff on the porch for several minutes with her arms handcuffed behind her. They then rolled her over and brought her to her feet with her arms still handcuffed behind her.

34. The dispatch record shows Plaintiff in custody at approximately 10:41 p.m., about eight minutes after the deputies arrived.

35. On information and belief, Brady and Jacquin each wore a body-worn camera that recorded the encounter.

36. The force Brady and Jacquin used fractured Plaintiff's left proximal humerus.

***Custody, Diagnosis, and the Refusal of Charges***

37. Brady and Jacquin transported Plaintiff, handcuffed, to Mercy Hospital Washington for a "fit for confinement" clearance. She was there for less than one hour. No imaging of her left arm or shoulder was performed.

38. Brady and Jacquin then took Plaintiff to the Franklin County Adult Detention Facility, where she was booked shortly after midnight on a twenty-four-hour hold. On information and belief, Plaintiff received no treatment for her left arm or shoulder while in the County's custody.

39. Plaintiff was released without being charged.

40. On September 25, 2025, Plaintiff went to the emergency department at Mercy Hospital Washington with severe, constant left shoulder pain. X-rays showed an acute comminuted fracture of the proximal left humerus, with the greater tuberosity fragment displaced by more than one centimeter and a dominant fracture line at the surgical neck. Her arm was placed in a shoulder immobilizer and she was prescribed narcotic pain medication.

41. A CT scan on October 8, 2025 confirmed a comminuted, three-part fracture of the proximal left humerus, with displaced components of the greater tuberosity and surgical neck.

42. Plaintiff had no prior problems with her left shoulder.

43. Plaintiff's treating orthopedic surgeon advised her that she will likely have decreased range of motion in her left shoulder as a result of this injury regardless of the treatment she receives.

44. On September 29, 2025, the Franklin County Prosecuting Attorney's Office refused Brady's warrant application in writing. The refusal states: "This wasn't a significant incident to begin with, Dawn already had to deal with some consequences for her actions by being assisted to the ground on the porch to be handcuffed, and the victim has called our office repeatedly and is not cooperative. I'm refusing this."

45. No criminal charge was ever filed against Plaintiff arising from the events of September 23, 2025.

***Damages***

46. As a direct and proximate result of Defendants' conduct, Plaintiff suffered a comminuted, three-part fracture of her left proximal humerus; severe physical pain; permanent loss of range of motion and function in her left arm and shoulder; and emotional distress, fear, and humiliation.

47. Plaintiff has incurred medical expenses and will incur medical expenses in the future. Plaintiff has been advised that she is likely to require a total shoulder replacement in the future.

48. Plaintiff has lost income, and her permanent physical limitations have impaired her capacity to work and earn in the future.

### *The County's Policies, Customs, Training, and Supervision*

49. Brady's report of the incident was reviewed and approved by a Sheriff's Office supervisor.

50. On information and belief, no use-of-force report was prepared regarding the force used on Plaintiff, no supervisory or internal review of that force was conducted, and neither Brady nor Jacquin was disciplined, counseled, or retrained as a result of it.

51. On information and belief, and as Plaintiff expects the evidence will show after a reasonable opportunity for discovery, on and before September 23, 2025 the County, through its Sheriff:

(a) failed to train its deputies on the limits on the use of force against persons suspected of nonviolent misdemeanors who pose no immediate threat and are not fleeing;

(b) failed to train its deputies in de-escalation and in alternatives to physical force when responding to domestic disturbance calls in which the reporting party is safe and separated;

(c) failed to train its deputies on the limits on seizing a person inside her home without a warrant;

(d) failed to require the reporting and supervisory review of force that causes a person to go to the ground or causes injury; and

(e) maintained a custom of tolerating, and failing to investigate or discipline, the use of unreasonable force by its deputies.

52. On information and belief, the need for such training, reporting, and supervision was obvious, and the County's failure to provide it reflected deliberate indifference to the rights of persons its deputies encounter, including Plaintiff.

## COUNT I – 42 U.S.C. § 1983 – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

[AGAINST DEFENDANT BRADY INDIVIDUALLY]

53. Plaintiff incorporates paragraphs 1 through 52.

54. Brady seized Plaintiff within the meaning of the Fourth Amendment when he took hold of her, pulled her out of her home, and handcuffed her.

55. The force Brady used was objectively unreasonable under the circumstances. Among other things:

(a) the suspected offense was a misdemeanor, which the Prosecuting Attorney's Office described in writing as not "a significant incident to begin with" and refused to charge;

(b) Plaintiff was unarmed and posed no immediate threat to the safety of the deputies, Tippett, or anyone else;

(c) Tippett was uninjured, outside the home, and under the protection of two deputies;

(d) Plaintiff was inside her own home and was not attempting to flee;

(e) Plaintiff did not strike, kick, or threaten either deputy;

(f) Brady pulled Plaintiff out of her home and to the ground without attempting any lesser means of gaining her cooperation; and

(g) the force broke Plaintiff's left humerus into three parts.

56. Brady's use of force deprived Plaintiff of her right under the Fourth and Fourteenth Amendments to be free from unreasonable seizure.

57. On September 23, 2025, it was clearly established that a law enforcement officer may not use significant force, including a forcible takedown, against a person suspected of a nonviolent misdemeanor who poses no immediate threat to anyone's safety, is not fleeing, and is not actively resisting arrest.

58. Brady acted with malice or with reckless indifference to Plaintiff's federally protected rights.

59. As a direct and proximate result of Brady's conduct, Plaintiff suffered the injuries and damages described above.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendant Brady on Count I for compensatory damages in an amount to be determined at trial; for punitive damages; for her reasonable attorney's fees and costs under 42 U.S.C. § 1988; for pre-judgment and post-judgment interest as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983 – EXCESSIVE FORCE AND FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

**[AGAINST DEFENDANT JACQUIN INDIVIDUALLY]**

60. Plaintiff incorporates paragraphs 1 through 52.

61. Jacquin participated in the seizure of Plaintiff. After Plaintiff had been pulled to the porch, Jacquin, together with Brady, pulled Plaintiff's arms behind her back, handcuffed her, left her handcuffed on the porch, and brought her to her feet with her arms handcuffed behind her, all while she complained of pain.

62. The force Jacquin used was objectively unreasonable under the circumstances for the reasons stated in paragraph 55.

63. In addition, Jacquin was present at the doorway, observed Brady take hold of Plaintiff and use force against her, knew or had reason to know that the force was unreasonable, had a realistic opportunity to prevent or stop it, and failed to do so.

64. Jacquin's conduct deprived Plaintiff of her right under the Fourth and Fourteenth Amendments to be free from unreasonable seizure.

65. On September 23, 2025, it was clearly established that a law enforcement officer may not use significant force, including a forcible takedown, against a person suspected of a nonviolent misdemeanor who poses no immediate threat to anyone's safety, is not fleeing, and is not actively resisting arrest, and that an officer who observes another officer using excessive force and has a realistic opportunity to intervene has a duty to do so.

66. Jacquin acted with malice or with reckless indifference to Plaintiff's federally protected rights.

67. As a direct and proximate result of Jacquin's conduct, Plaintiff suffered the injuries and damages described above.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendant Jacquin on Count II for compensatory damages in an amount to be determined at trial; for punitive damages; for her reasonable attorney's fees and costs

under 42 U.S.C. § 1988; for pre-judgment and post-judgment interest as allowed by law; and for such other and further relief as this Court deems just and proper.

**COUNT III – 42 U.S.C. § 1983 – MUNICIPAL LIABILITY**
**[AGAINST DEFENDANT FRANKLIN COUNTY, MISSOURI]**

68. Plaintiff incorporates paragraphs 1 through 67.

69. Brady and Jacquin deprived Plaintiff of her rights under the Fourth and Fourteenth Amendments as described in Counts I and II.

70. The County's policies, customs, and failures to train and supervise described in paragraphs 49 through 52 were adopted or maintained with deliberate indifference to the constitutional rights of persons with whom its deputies come into contact.

71. Those policies, customs, and failures were the moving force behind the violation of Plaintiff's constitutional rights.

72. As a direct and proximate result, Plaintiff suffered the injuries and damages described above.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendant Franklin County, Missouri on Count III for compensatory damages in an amount to be determined at trial; for her reasonable attorney's fees and costs under

42 U.S.C. § 1988; for pre-judgment and post-judgment interest as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT IV – BATTERY UNDER MISSOURI LAW

**[AGAINST DEFENDANTS BRADY AND JACQUIN INDIVIDUALLY]**

73. Plaintiff incorporates paragraphs 1 through 52.

74. Brady and Jacquin intentionally made physical contact with Plaintiff by taking hold of her, pulling her out of her home, pulling her arms behind her back, handcuffing her, and lifting her by her handcuffed arms.

75. That contact was harmful and offensive, and Plaintiff did not consent to it.

76. Brady and Jacquin used more force than was reasonably necessary under the circumstances.

77. Brady and Jacquin acted in bad faith and with malice, in that they intentionally used force they knew or should have known was unnecessary and was likely to injure Plaintiff.

78. As a direct and proximate result of that conduct, Plaintiff suffered the injuries and damages described above.

**WHEREFORE,** Plaintiff prays for judgment in her favor and against Defendants Brady and Jacquin, jointly and severally, on Count IV for compensatory damages in an amount that is fair and reasonable; for her costs; for pre-judgment and

post-judgment interest as allowed by law; and for such other and further relief as this Court deems just and proper. Plaintiff does not by this pleading seek punitive damages on Count IV and reserves the right to seek leave to do so as permitted by law.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

By: /s/ Jacob Chinnery
**Jacob Chinnery # 77909**
Attorney for Plaintiff
Cardinal Law
211 W Main St
P.O. Box 1144
Steelville, Missouri 65565
(573) 885-1400
(314) 477-8694
jchinnery@molaw.org